**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| LEONA THIBODEAUX | : | DOCKET NO. 2:13-2651 |
| VS. | : | JUDGE TRIMBLE |
| TRUNKLINE GAS CO. L L C | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #11) wherein defendant, Trunkline Gas Company, LLC ("Trunkline") seeks to have plaintiff, Leona Thibodeaux's claims dismissed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff opposes the motion.

## STATEMENT OF FACTS

Trunkline imports and transports natural gas.[1] In June 2003 Southern Union Company ("Southern Union") acquired Panhandle Energy and in November 2004, Southern Union acquired CrossCountry Energy. Through Panhandle Energy, Southern Union owns and operates 100% of Trunkline.[2] On March 26, 2012, Southern Union, Energy Transfer Equity, L.P. ("Energy Transfer") and Sigma Acquisition Corporation, a wholly owned subsidiary of Energy Transfer, merged.[3]

Due to the merger of Southern Union and Energy Transfer, a reduction-in-place caused thirty-three employees to be terminated on May 4, 2012. Of the thirty-three employees terminated, twenty

---

[1] Def. exhibit 2, Keegan Pieper Declaration, ¶ 4.

[2] Id. ¶ 5.

[3] Def. exhibit 3, Christopher Curia Declaration, ¶ 4.

were Caucasian, three were Hispanic, three were Asian and seven were African-American. Eleven were male and twenty-two were female; the ages ranged from 35 to 70.[4]  In addition, from May 4, 2012 through December 31, 2012, 48 other employees were transitioned as part of the reduction-in-force; ultimately, 43 of the 48 were discharged. Of these forty-three discharged, twenty-seven were Caucasian, five were Hispanic, two were Asian, and nine were African-American; twenty-two were male and twenty-one were female.[5] The employees terminated on May 4, 2012 and the transitioned employees were from various offices across the United States, including locations in Texas, Louisiana, Florida, Missouri and Indiana.[6]

Plaintiff, Leona Thibodeaux, was one of the employees adversely affected by the reduction-in-force. Plaintiff began her employment with Trunkline in 1998 as an Analyst; she was supervised by Mr. Scott McAtee.[7] On or about March 26, 2006, plaintiff was promoted to Senior Division Analyst.[8] In her deposition, plaintiff testified that McAtee once commented to her around either the year 2006 or 2007 that "[t]he reason why he never hired another minority after me was because of me."[9]

On or about December 21, 2011, McAtee met with plaintiff to discuss her 2011 year end

---

[4] Def. exhibit 4, ¶ 6.

[5] Id. ¶ 8.

[6] Id. ¶ 9.

[7] Def. exhibit 1, p. 20.; Def. exhibit 5, Ronald Sims Declaration and attached ex. 5-1.

[8] Id. pp. 32, 54, 55, attached ex.7 and 5.

[9] Def. exhibit 1, p. 57.

2

performance review ("Evaluation").[10] The Evaluation noted that plaintiff needed improvements in areas of adaptability and teamwork; it also noted that plaintiff's job knowledge and technical skills were excellent.[11]  When she refused to sign the Evaluation, plaintiff testified that McAtee told her that he finally had the reason he had been looking for to sign her "pink slip."[12] On that same date, plaintiff responded via email alleging that the Evaluation was discriminatory;[13] plaintiff also wrote a 13-page response to the Evaluation which she submitted to McAtee and Human Resources Manager Ron Sims.[14]

In connection with the March 26, 2012 merger, Energy Transfer formed a committee to review, assess and evaluate certain efficiencies and synergies of the merger.[15] Keegan Pieper, Associate General Counsel for Energy Transfer, was a member of the committee and was involved in identifying and evaluating efficiencies and synergies in contract-related functions and job positions between Energy Transfer and Southern Union.[16] Pieper discovered significant differences between the contract administrative functions in Energy Transfer and Southern Union.[17]

Prior to the merger, Southern Union's contract administrative functions were performed in

---

[10] Id. pp. 25, 31, 123, attached ex. 4.

[11] Id. p. 125, attached ex. 4.

[12] Pl. exhibit 1, p. 103.

[13] Id. pp. 134, 135 and attached ex. 6.

[14] Id. pp. 123, 124, 125, 127 and attached ex. 5.

[15]  Def. exhibit 2, ¶ 7; def. exhibit 3, ¶ 4-5 and attached ex. 3-1.

[16] Def. exhibit 2, ¶ ¶ 3, 8.

[17] Id., ¶ 9.

Houston, Texas, Lake Charles, Louisiana, Maitland, Florida, Indianapolis, Indiana, Kansas City, Missouri and Midland, Texas,[18] whereas Energy Transfer's functions were performed in Houston, Texas and San Antonio, Texas.[19]  These offices included approximately 28-35 analysts performing contract administrative functions for both companies prior to the merger.[20]

Pieper's evaluations determined that consolidating and centralizing the contract administrative functions in Texas under uniform, universal procedures would reduce annual overhead by approximately $1.2 to $1.7 million and reduce man-hours by approximately 74%. After the merger, it was determined that only 17 analysts were necessary to perform the contract administrative functions.[21]

Pieper ultimately decided to consolidate and centralize all contract administrative functions in Houston, Texas and San Antonio, Texas which resulted in eliminating job positions located in Lake Charles, Louisiana, Maitland, Florida, Midland, Texas, Indianapolis, Indiana and Kansas City, Missouri.[22]

At the time of the merger, plaintiff, Tom Rutledge and McAtee were employed in Southern Union's Lake Charles office.  Plaintiff was a Senior Division Analyst, Rutledge, who was trained by plaintiff, performed contract administrative functions, and McAtee supervised both plaintiff and

---

[18]  Pieper noted that these analysts performed contracting functions under varying, non-universal procedures that differed from office to office. Id., ¶ 10.

[19] Id., ¶ 10.

[20] Id., ¶ 13.

[21] Id. ¶ 14.

[22] Id., ¶ 15.

Rutledge, and also performed contract administrative functions.[23]  All three of these employees' job positions were eliminated as part of the reduction-in-force on May 4, 2012.

Pieper attempted to contact employees who were performing contract administrative functions at the Southern Union field offices to assess their interest and potential candidacy for job positions related to the contract administrative function that were being centralized and located in Texas.[24] Plaintiff's job position was one of the jobs to be eliminated.[25]  Pieper made several attempts via telephone[26] and company email, but received no response.  Pieper was not aware of plaintiff's race, age or that she had made complaints of discrimination.[27]

Plaintiff testified in her deposition that during the time that the merger took place and also while Pieper was attempting to contact her, she was on a six-week emergency medical leave and had been hospitalized for dehydration and a possible stroke.[28] Plaintiff took medical leave at the end of March 2012.  Plaintiff also testified that the e-mail correspondence from Pieper was sent to her internal Trunkline email address which she read the day she returned to work on approximately May

---

[23] Def. exhibit 1, pp. 36, 109; Def. exhibit 2, ¶ 17.

[24] Id., ¶ 19.

[25] Id., ¶ 20.

[26]  Def. exhibit 2, ¶ ¶  19, 20 and 21. Plaintiff testified that at that time, she did not have a cell phone, but the company had her home phone number. She testified that she did not receive a phone call at home. Pl. exhibit 1, p. 84.

[27] Def. exhibit 2, ¶ ¶  22 and 23.

[28] Pl. exhibit 1, pp. 67, 83, 84, 85, 87, 100.

2nd or May 3rd.[29]  Plaintiff testified she did not receive a phone call at home.[30]

   After returning to work from medical leave, the Human Resource Director informed plaintiff of the elimination of her position, and told her to visit the company's website, and apply for any position for which she was qualified.[31]  In her deposition, plaintiff testified that she did not visit the website and apply for a position with the new company.[32]  Plaintiff further testified that she received an offer of a severance package, but did not accept it.  Instead, she met with a local attorney and requested a 45 day extension which was denied. Ultimately, plaintiff did not receive the severance pay because she never accepted it.[33]

   McAtee and Rutledge's jobs were also eliminated. Mr. Rutledge was offered and accepted the position of Contracts Manager in Houston, Texas, and Mr. McAtee accepted a non-contract related position as a Senior Manager of Cost Control with Energy Transfer in the procurement department in Houston, Texas.[34] Both Mr. McAtee and Mr. Rutledge are white males; plaintiff is a black female.

## SUMMARY JUDGMENT STANDARD

   Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable

---

[29] Pl. exhibit 3, p. 85.

[30] Id.

[31] Id., p. 92.

[32] Id.

[33] Id., pp. 93-95.

[34] Def. exhibit 2, ¶ 26 (R. #11-9); Def. exhibit 7, p. 6 (R. #11-9).

to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[35] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[36]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[37] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[38] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[39]  The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[40]  There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[41]  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[42]

---

[35]  Fed. R.Civ. P. 56(c).

[36]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[37]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[38]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[39]  Anderson, 477 U.S.  at 249.

[40]  Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

[41]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[42]  Anderson, 477 U.S. at 249-50.

## LAW AND ANALYSIS

In her complaint, plaintiff alleges she was terminated and/or not rehired based on her race, gender, age, and retaliation for her prior complaints alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[43]        To establish a *prima facie* case of discrimination in violation of Title VII, plaintiff must show that she "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class."[44] In a reduction-in-force case, the fourth element is replaced with "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."[45] Once plaintiff establishes a *prima facie* case, defendant must articulate a legitimate, non-discriminatory reason for its decision to discharge plaintiff.[46] If defendant meets this burden, then plaintiff must offer sufficient evidence to create a genuine issue of material fact that defendant's reasons are not true, or are merely pretext for discrimination, or that the defendant's reason, while true, is only one of the reasons for its conduct and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive alternative)." [47] A reduction in force is a legitimate, non-discriminatory reason for eliminating

---

[43] 42 U.S.C. § 2000, et seq.

[44] Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004), (citing Okoye v. Univ. of Texas Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001)).

[45] Pryor v. MD Anderson Cancer Center, 495 Fed.Appx. 544 (C.A. 5 Tex. 2012) citing Palasota v. Haggar Clothing Co., 342 F.3d 569, 576 (5 th Cir. 2003).

[46] Berquist v. Washington Mut. Bank, 500 F.3d 344, 356 (5th Cir. 2007).

[47] Id.; Rachid v. Jack in the Box, 376 F.3d 305, 312 (5th Cir. 2004).

positions and discharging employees.[48] "A subjective belief of discrimination, however genuine," is not a permissible basis of judicial relief.[49]

*Wrongful termination/failure to rehire*

Defendant maintains that plaintiff has failed to establish a *prima facie* case– specifically that plaintiff has failed to provide evidence, whether circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision to eliminate plaintiff's position. Defendant submits as summary judgment evidence the Declarations of Keegan Pieper and Robert M. Kerrigan, II which declare that plaintiff was one of 33 employees terminated on May 4, 2012 as part of a reduction in force.

Defendant's summary judgment evidence undisputably establishes that the reduction in force was non-discriminatory and based solely on financial and business considerations. While plaintiff alleges that her supervisor, McAtee may have used discriminatory animus to influence the decision to eliminate her position, she has failed to present evidence to support this allegation. On the other hand, defendant has presented summary judgment evidence that it was Pieper who made the decision to consolidate and centralize all contract administration functions in Texas, and this decision did not involve McAtee. The affidavit further attests that McAtee was not involved in a decision not to offer plaintiff another position, nor did McAtee make any remarks to Pieper regarding plaintiff's race, gender, age, or any prior complaints of her allegations of discrimination.

Plaintiff argues that she was the only employee in her division that was not relocated after the layoff, and further she "was the only whistleblower who had complained of years' of

---

[48] <u>E.E.O.C. v. Tex. Instruments, Inc.</u>, 100 F.3d 1173, 1181 (5th Cir. 1996).

[49] <u>Elliott v. Grp. Med. & Surgical Serv.</u>, 714 F.2d 556, 567 (5th Cir. 1983).

discriminatory acts prior to her termination."[50]   Plaintiff further complains that her white male colleagues, one of whom she had trained, were offered positions in Houston.  Plaintiff remarks that her termination occurred right after her annual performance review which she claimed was discriminatory.  Plaintiff suggests that her performance review was used as a means of disciplining her, reminding the court of McAtee's remark that he finally had the reason he had been looking for to sign her "pink slip,"[51] and the remark he made in 2006 that she was the only reason he would never hire another minority.[52] Plaintiff also relies on her deposition wherein she testified that McAtee told her he was on a sub-committee to deal with issues relating to the integration and merger.[53]

With respect to the decision to eliminate the Lake Charles contract administrative functions made by Pieper, an Energy Transfer employee, plaintiff has failed to submit summary judgment evidence, whether direct or circumstantial,  from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision to eliminate plaintiff's and other Southern Union employees' job positions. While plaintiff may have complaints with respect to her working relationship with McAtee, she has failed to create a genuine issue for trial that McAtee had anything to do with a nationwide reduction in force that included not only her job position, but also included the positions of McAtee and Rutledge as well as others as mentioned above.

Plaintiff maintains that the "relevant 'decision at issue' is not the original decision to lay Plaintiff off, but rather the subsequent decisions not to include Plaintiff in the rehire which consisted

---

[50] Opposition to motion for summary judgment, p. 2. R. #13.

[51] Plaintiff exhibit 1, p. 103.

[52] Plaintiff's exhibit 1, p. 57, 70, 103.

[53] Plaintiff's exhibit 1, p. 103.

of only the white males with whom she worked."[54] Plaintiff relies on circumstantial evidence;
McAtee's remarks that he would never hire another minority, plaintiff's 2011 performance review
which indicated areas of needed improvement, and McAtee's remark that he had a reason to sign her
pink slip after she refused to sign the Evaluation. Plaintiff also relies on the fact that out of the three
eliminated positions in the Lake Charles office, two white males were offered positions in Houston
and she was not.  Plaintiff further complains that during her hospitalization, McAtee did not inform
her that someone from the company was attempting to contact her about the pending reduction in
force even though she was in constant contact with him and other co-workers. The court notes that
plaintiff had been made aware of the merger prior to her being hospitalized, and she testified that she
was aware that her job position might be in jeopardy.[55]

The court finds that McAtee's remark about never hiring another minority which occurred
approximately six years earlier (in either 2006 or 2007) is entirely too attenuated to be relied upon
as a basis for discrimination.[56] As for the Evaluation, we find that it contained constructive criticism
but had no racial animus.  In her deposition, plaintiff repeatedly testified that she had no difficulties
with her co-workers, but that they had difficulties with her.[57]  Plaintiff also testified that she was not
the only employee McAtee had issues with and that other analysts had either refused to work with

---

[54] Opposition to motion for summary judgment, p. 6. R. #14.

[55] Pl. exhibit 1, p. 82.

[56]  The court further notes that shortly after making this comment, McAtee hired a
minority – Tiffany Richards. Def. exhibit 1, pp. 57, 58, 59, 60 , 61. R. #11-3.

[57] Pl. exhibit 1, p. 76.

him, or had quit while working for him.[58]  She further testified that Scott "had a history of having issues with employees."[59] What is fatally absent is any evidence of racial or gender discrimination.

With respect to her failure to re-hire claim, plaintiff must show that she was "clearly better qualified' such that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate[s] selected over the plaintiff for the job in question."[60] "'[U]nless the qualifications are so widely disparate that no reasonable employer would have made the same decision,' any 'differences in qualifications are generally not probative evidence for discrimination.'"[61]

Defendant remarks that even after plaintiff returned to work and received notice of the reduction in force and before her termination, plaintiff did not visit the company website to look for a position, and she did not apply, nor submit a resume for any position.  Therefore, Trunkline was not given the opportunity to consider plaintiff for a position.

Defendant also submits summary judgment evidence as to Rutledge's qualifications.  Not only did Rutledge have contract administrative experience, he also had previous management experience; plaintiff did not have management experience. Plaintiff testified that Rutledge, whom

---

[58] Pl. exhibit 1, p. 71.

[59] Id., p. 72, lines 13-14.

[60] Austin v. La. Generating LLC, 265 Fed. Appx. 207, 210 (5th Cir. 2008); see also Churchill v. Texas Dep't of Criminal Justice, 539 F.App'x 315, 318 (5th Cir. 2013); Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010)(citing EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1444 (5th Cir. 1995)).

[61] Moss, 610 F.3d at 923 (citing Deines v. Texas Dep't of Protective & Regulatory Servs., 164 F.3d 277, 281 (5th Cir. 1999); Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 357 (5th Cir. 2001)(abrogated on other grounds)).

she trained, was a long-term employee who had worked for the company longer than she.[62] Rutledge was offered and accepted a position in Houston, Texas as a Contracts Manager.  He spoke with Pieper via telephone, submitted his resume and met with Pieper in Lake Charles.

McAtee was rehired as the Senior Manager of Cost Control with Energy Transfer in the procurement department in Houston, Texas. He had worked for the company in a supervisory role since 1998.  Plaintiff has failed to offer proof of her management experience or familiarity for that position.

Plaintiff did not visit the company website, submit a resume or apply for the Contract Manager  position, the Manager of Cost Control position,  or any other position. Furthermore, plaintiff has failed to submit any summary judgment evidence as to her qualifications for these two job positions. Thus, the court finds that plaintiff has failed to show that she was better qualified than either Rutledge or McAtee.  Furthermore, plaintiff has failed to create a genuine issue for trial to show that the reason for eliminating her position and/or not rehiring her is pretextual. Plaintiff has failed to submit summary judgment evidence that her race, gender or age was a motivating factor in the decision to terminate her employment in May 2012. Accordingly, plaintiff's claims for wrongful termination and/or failure to rehire will be dismissed.

*Retaliation*

To prove retaliation, an employee must establish that: (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action against the employee; and

---

[62] Defendant exhibit 2, ¶ ¶ 24-25. R. #11-4; Defendant exhibit 1, pp. 31, 74, 75, 87. R. #11-3.

(3) a causal connection exists between that protected activity and the adverse employment action.[63]

In University of Texas Southwestern Medical Center v. Nassar,[64] the Court held that instead of the lessened causation test stated in 42 U.S.C. § 2000e-2(m), a plaintiff must prove that the employer's unlawful motive is the "but for" cause and not simply a motivating factor in the adverse action.

Defendant maintains that plaintiff has not demonstrated a causal connection between her protected conduct and her discharge or failure to rehire, and further, plaintiff will be unable to meet the but for causation burden that the United States Supreme Court has placed on Title VII retaliation claims.

Three indicia of causation are "(1) the absence of any reference to the conduct at issue in the employee's disciplinary record, (2) deviation from the employer's customary policy and procedures in terminating the employee, and (3) temporal proximity between the termination and protected conduct."[65]

Defendant maintains that plaintiff has failed to present evidence that her job elimination was conducted in a manner that deviated from the way others were terminated in connection with the reduction in force. Defendant further maintains that plaintiff's protected activity– plaintiff's complaints for unfair pay and lack of promotion– was made at various times from 2001 until 2008 well beyond the temporal proximity the Fifth Circuit has required to establish a *prima facie* case.[66]

---

[63] McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).

[64] 133 U.S. 2517, 2533 (June 24, 2013).

[65] Pryor, 495 Fed.Appx. at 547, citing Nowlin v. Resolution Trust Corp., 33 F.3d 498, 508 (5th Cir. 1994).

[66] See Raggs v. Miss. Power & Light, 278 463, 471-72 (5th Cir. 2002)( a five month lapse period bewteen the protected activity and an employer's refusal to rehire was not sufficient to

14

Defendant asserts that plaintiff received steady increases in pay throughout her tenure, and received a promotion to senior division analyst in 2006 after she had alleged that she was being discriminated against.

Plaintiff also complained of unfair treatment around December 2011 or January 2012 after receiving her 2011 year end performance review. Plaintiff relies on McAtee's alleged repeated statement that he was just waiting to sign her pink slip and that the December 2011 Evaluation was just four months prior to the ultimate decision to lay her off and not rehire her. However, as discussed above, plaintiff has failed to submit any evidence with respect to the Evaluation that show that there was any bias or discrimination as to plaintiff's race, gender or age. Furthermore, plaintiff has failed to submit any summary judgment evidence to create a genuine issue of fact for trial that her layoff deviated in any way from the company's customary policy and procedures. As noted by defendant, Trunkline has undisputably presented a legitimate, nondiscriminatory reason for its reduction in force which resulted in plaintiff's layoff. Furthermore, because plaintiff failed to seek out a job position that she was qualified for and apply for it, plaintiff cannot establish that Trunkline's reason for not rehiring her was pretextual. Accordingly, plaintiff's claim for retaliation will be dismissed.

*Age Discrimination in Employment Act ("ADEA") claim*

In her petition, plaintiff alleges that her "termination was not only discriminatory based on her race and age but it was also in retaliation for her complaints of prior acts of discrimination.[67] Defendant maintains that plaintiff has failed to submit evidence of age discrimination. Defendant

---

establish a *prima facie* case).

[67] Petition for Damages, ¶ 9. R. #1.

15

submits plaintiff's deposition testimony wherein she testified that she did not believe that she was not being given pay increases because of her age.[68] Defendant further remarks that many of the employees whose positions were terminated were under the age of forty.[69] Defendant further argues that it has been able to demonstrate that plaintiff's termination was the result of a legitimate reduction in force. Plaintiff has failed to address this argument in her opposition. The court finds that plaintiff has failed to establish a *prima facie* case for any age discrimination claim under the ADEA. Therefore, this claim will be dismissed.

**CONCLUSION**

Based on the reasons set forth above, the court will grant defendant's motion for summary judgment in its entirety and dismiss with prejudice plaintiff's claims against the defendant.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this  6th  day of January, 2015.

 

 

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[68] Def. exhibit 1, p. 42.

[69] Def. exhibit 4, ¶ ¶ 5, 7.

16